*NLRB. v. Laborers' Int'l Union, Loc. Union No. 91*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of February, two thousand twenty-three.

PRESENT:
> BARRINGTON D. PARKER,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> > *Circuit Judges*.

_____

NATIONAL LABOR RELATIONS BOARD,

> *Petitioner*,

> v.                                                                          No. 21-71

LABORERS' INTERNATIONAL UNION OF
NORTH AMERICA, LOCAL UNION NO. 91,

> *Respondent*.

_____

**For Petitioner:**                          Kira Dellinger Vol, Supervisory Attorney, Milakshmi V. Rajapakse, Attorney, Peter Sung Ohr, Acting General Counsel, Iva Y. Choe, Acting Deputy General Counsel, Ruth E. Burdick, Deputy Associate General Counsel, David Habenstreit, Assistant General Counsel, National Labor Relations Board, Washington, DC.

**For Respondent:**                          Robert L. Boreanaz, Joseph L. Guza, Lipsitz Green Scime Cambria LLP, Buffalo, NY.

On application for enforcement of a decision and order of the National Labor Relations Board.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the application for enforcement is **GRANTED**.

The National Labor Relations Board (the "NLRB," or the "Board") seeks enforcement of its October 28, 2020 decision and order affirming and adopting (with amendment) the June 28, 2019 decision of an Administrative Law Judge (the "ALJ"), which found that the Laborers' International Union of North America, Local Union No. 91 (the "Union") had committed multiple violations of section 8(b)(1)(A) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 158(b)(1)(A),

by engaging in retaliatory conduct against union members Duane Korpolinski and Frank Mantell.  In opposition to the NLRB's application for enforcement, the Union raises a series of challenges to the NLRB's decision.  We assume the parties' familiarity with the underlying facts, procedural history, and issues relevant to the application for enforcement.

"Factual findings of the Board will not be disturbed if they are supported by substantial evidence in light of the record as a whole," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *NLRB v. Starbucks Corp.*, 679 F.3d 70, 77 (2d Cir. 2012) (citation omitted). Furthermore, "[l]egal conclusions based upon the Board's expertise should receive, pursuant to longstanding Supreme Court precedent, considerable deference."  *Id.* (internal quotation marks omitted).  We address each of the Union's contentions in turn.

*First*, the Union contends that the Board lacked substantial evidence for its finding that one of Korpolinski's charges – specifically, the one alleging that the Union's business manager, Richard Palladino, consistently failed to refer Korpolinski for jobs from the out-of-work list – was timely.  Section 10(b) of the Act provides that "no complaint shall issue based upon any unfair labor practice

3

occurring more than six months prior to the filing of the charge with the Board."

29 U.S.C. § 160(b). The Board has interpreted the section-10(b) limitations period

to begin to run once the charging party has "clear and unequivocal notice, either

actual or constructive, of an unfair labor practice." Sp. App'x at 16 (internal

quotation marks omitted); *see also NLRB v. Glover Bottled Gas Corp.*, 905 F.2d 681,

684 (2d Cir. 1990) (discussing the unequivocal-notice rule). Actual or constructive

knowledge "may be ascribed where the conduct was sufficiently open and

obvious to provide clear notice and/or where the party would have discovered the

violation had it exercised reasonable diligence." Sp. App'x at 16 (internal

quotation marks omitted).

Applying this legal framework – which neither party contests – the Board

reasonably determined that Korpolinski did not have actual or constructive

knowledge of the retaliatory lack of referrals more than six months prior to filing

his charge in July 2017. To be sure, it is undisputed that, prior to January 2017,

Korpolinski knew he had not been referred for work by the Union since November

2015, had access to the out-of-work referral lists, and could observe during his

regular visits to the hiring hall whether other Union members seemed to be

working. Nevertheless, the Board had ample basis to conclude that it was neither

4

obvious nor discoverable through reasonable diligence that Palladino was *impermissibly bypassing* Korpolinski on the list, particularly since there were many referral-rule exceptions pursuant to which Palladino might permissibly make referrals out of order. On this record, we cannot say the Board's factual finding regarding notice, and thus the timeliness of Korpolinski's refusal-to-refer charge, is inadequately supported. *See Encore Event Techs., LLC*, 371 N.L.R.B. No. 161, slip op. at 2 (Sept. 30, 2022) ("[A] charging party's delay in filing an unfair labor practice charge will not bar a charge when the delay is a consequence of . . . ambiguous conduct by the other party." (internal quotation marks omitted)).[1]

*Second*, also pertaining to Korpolinski's refusal-to-refer charge, the Union argues (1) that the ALJ and Board should have applied a modified version of the framework laid out in *Wright Line, a Div. of Wright Line, Inc.*, 251 N.L.R.B. 1083 (1980), and required the NLRB General Counsel to prove as part of his prima facie case that Korpolinski was eligible for the referrals that he was refused; and (2) that the Board lacked substantial evidence for its finding that Palladino's failure to refer Korpolinski was motivated by his support for Mantell, given that other members

---

[1] Contrary to the Union's assertions, this finding is not inconsistent with other NLRB precedent. *See, e.g.*, *Loc. 25, Int'l Bhd. of Elec. Workers*, 321 N.L.R.B. 498, 499–501 (1996) (finding that the charging party in an exclusive hiring-hall had notice of a violation when at least three fellow members explicitly told her of an out-of-order referral).

were often bypassed along with Korpolinski. In its exceptions to the Board, however, the Union did not raise either of these arguments; instead, it stated generally that "the record clearly demonstrates that [the Union] has only conformed with its own referral rules and never referred work based on animosity towards protected activity." J. App'x at 1610. As a result, we find that we lack jurisdiction to consider these challenges presented for the first time in opposition to the NLRB's application for enforcement. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."); *NLRB v. Consol. Bus Transit, Inc.*, 577 F.3d 467, 474 n.2 (2d Cir. 2009) ("[W]e 'lack jurisdiction to review objections that were not urged before the Board.'" (quoting *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 666 (1982)))).[2]

---

[2] To the extent that the Union's exception could be construed to have preserved our jurisdiction, we note that both arguments would fail on the merits. First, even if we assumed that the Union is legally correct that the NLRB General Counsel was required to prove as part of its prima facie case that Korpolinski was eligible for referrals, the record is replete with evidence that Korpolinski *was* eligible for many of the jobs for which he was bypassed. Second, the fact that others were also bypassed on occasion neither logically precludes, nor undermines the substantial-evidence support for, a finding that the Union continuously bypassed Korpolinski out of animus for his support of Mantell.

6

*Third*, the Union contends that the Board lacked substantial evidence for its finding that Palladino threatened Korpolinski, in violation of section 8(b)(1)(A) of the Act, when Palladino told him that the Union would sue him to recover legal fees if he made false statements or charges to the NLRB. Although the ALJ's finding did rest on Korpolinski's uncorroborated testimony concerning the statements made by Palladino – statements Palladino denied making – the ALJ *also* made extensive credibility findings, which the Board adopted, explaining precisely why she found Korpolinski's account of the conversation to be more credible than Palladino's. Because that credibility determination is neither "incredible" nor "flatly contradicted by undisputed documentary testimony," we must accept it and conclude that substantial evidence supports the finding that Palladino made the threats described by Korpolinski. *NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 169–70 (2d Cir. 2021) (citation omitted).

*Fourth*, and finally, the Union asserts that the Board lacked jurisdiction over Korpolinski's and Mantell's charges alleging their removal for extended periods of time from the out-of-work referral list, as those allegations related to internal Union disciplinary matters insulated from Board review. *See* 29 U.S.C. § 158(b)(1)(A). But this argument rests on a faulty factual premise. The Board

7

reasonably found that when Palladino removed Korpolinski and Mantell from and/or kept them off the out-of-work referral list, he was not in fact *disciplining* them for violations of the Union's referral rules – but rather, engaging in *ad hoc retaliation* for Mantell's prior criticism of Palladino and Korpolinski's support of Mantell, and using the alleged referral-rule violations as a pretext. Such actions are firmly within the purview of the Board. *See, e.g.*, *Sheet Metal Workers Loc. 104*, 311 N.L.R.B. 99, 105–06 (1993) (applying *Wright Line* framework to cases in which a union is alleged to have discriminated against a member, even where discrimination is purportedly discipline); *cf. Breininger v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 6*, 493 U.S. 67, 91–92 & n.15 (1989) (in the context of the Labor-Management Reporting and Disclosure Act, holding that "Congress' reference to punishments typically imposed by the union as an entity through established procedures indicates that Congress meant 'discipline' to signify penalties applied by the union in its official capacity rather than ad hoc retaliation by individual union officers").

\*     \*     \*

8

We have considered the Union's remaining arguments and find them to be without merit.  Accordingly, the application for enforcement is **GRANTED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court